ORDERED.

Dated:  May 22, 2015

_____
Karen S. Jennemann
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| GARY ROBERT HICKS and ) | Case No.  6:14-bk-07149-KSJ |
| RHONDA FREEMAN HICKS, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |
| MARTHA JEANETTE WALLS, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Adversary No. 6:14-ap-00130-KSJ |
| ) | |
| GARY ROBERT HICKS, ) | |
| ) | |
| Defendant. ) | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff, Martha Walls, is the former wife of the Debtor and Defendant, Gary Hicks. Plaintiff contends that the monies awarded to her under their Final Judgement and Decree of Divorce[1] (the "Divorce Decree") are not dischargeable in the Defendant's Chapter 7 bankruptcy case.  Defendant agrees that most of the Plaintiff's claims are nondischargeable under

---

[1] Final Judgment and Decree for the Dissolution of Marriage, Ex.  A to Plaintiff's Complaint, Doc. No. 1.

§ 523(a)(15) of the Bankruptcy Code,[2] but argues *only* the alimony payments are nondischargeable under § 523(a)(5). Defendant further argues his obligation under the Divorce Decree to pay the Plaintiff a certain percentage of his military retirement pay is not subject to dischargeability analysis. The Court finds that *all* the obligations created by the Divorce Decree are not dischargeable.

The parties divorced on May 31, 2013. A Georgia State Court[3] entered the Divorce Decree, imposing monetary obligations on the Defendant and awarding the Plaintiff portions of the marital property:

- **Marital Residence Debt:** Paragraph 3(A) provides the Defendant "shall be solely responsible for making timely payments of the note secured by the marital residence loans and shall pay said note marital residence note [sic] in full within one hundred, eighty (180) days from the entry of this Final Judgment and Decree of Divorce."[4]

- **Military Retirement Pay:** Paragraph 4(A) pertains to the division of "marital property" and provides that the Defendant's "military disposable retirement pay" is "subject to equitable division" and awards the Plaintiff 60% and the Husband 40%.[5]

- **Remaining Marital Debt:** Paragraph 6(B) requires the Defendant to pay "all remaining martial debt," except the specific debts identified in Paragraph 6(A).[6]

- **Alimony:** Paragraph 7 requires the Defendant to pay alimony as follows: "[a] lump sum in the amount of Twenty-five Thousand Dollars ($25,000.00) to be paid *instanter*. Then, beginning May 1, 2013, and continuing on the first day of each month thereafter until [Plaintiff] dies or remarries or the [Defendant] dies, the sum of Four Thousand Dollars ($4,000.00)."[7]

- **Attorney Fees:** Paragraph 8 orders the Defendant to pay Plaintiff $8,000.00 in attorney fees and costs incurred in the divorce proceeding.[8]

---

[2] All references to the Bankruptcy Code are to 11 U.S.C. § 101 *et seq*.
[3] Georgia State Court refers to the Superior Court of Towns County, Georgia.
[4] Doc. No. 1, Exhibit A at 3.
[5] *Id.* at 4.
[6] *Id.*
[7] *Id.*
[8] Ex. A at 6 to Plaintiff's Complaint, Doc. No. 1.

The parties do not dispute the validity of the Divorce Decree or the Defendant's default on the Divorce Decree Debts. Defendant has not paid off the marital residence note, required by Paragraph 3(A); Defendant has only paid 50% of his military disposable retirement pay to the Plaintiff required by Paragraph 4(A) and still owes the Defendant the 10% in arrearages; Defendant has not paid the "remaining marital debt" required by Paragraph 6(B); and Defendant has not paid Plaintiff's outstanding attorney's fees as required by Paragraph 8.

Defendant filed for Chapter 7 bankruptcy relief on June 20, 2014. Plaintiff argues the obligations created by the Divorce Decree are not dischargeable under §§ 523(a)(5) and 523(a)(15) of the Bankruptcy Code. Plaintiff bears the burden to establish the nondischargeability of the Defendant's unfulfilled obligations by a preponderance of the evidence.[9] Exceptions to discharge are to be "strictly construed against the creditor and liberally in favor of the debtor."[10] This maxim is "tempered, however, when the debt arises from a divorce or separation agreement."[11]

Sections 523(a)(5) and 523(a)(15) govern the dischargeability of various claims incident to divorce.[12] Section 523(a)(5) provides any debt constituting a "domestic support obligation" is not dischargeable. Section 101(14A) defines "domestic support obligation" as a debt that is owed to or recoverable by a spouse that is "in the nature of alimony, maintenance, or support . . . of such spouse" and established by "a separate agreement, divorce decree, or property settlement agreement . . . ."[13]

Section 523(a)(15) excepts from discharge any debt:

> to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph [523(a)] (5) that is incurred by the debtor in the course of a divorce or separation or in connection

---

[9] *Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d. 755 (1991).
[10] *Schweig v. Hunter (In re Hunter)*, 780 F. 2d 1577, 1579 (11th Cir. 1986).
[11] *Matter of Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998).
[12] 11 U.S.C. §§ 523(a)(5) & 523(a)(15).
[13] 11 U.S.C. § 101(14A).

with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit.[14]

The parties agree that most of the obligations in the Divorce Decree are not dischargeable as to the Plaintiff. Defendant concedes (1) the lump sum and periodic alimony debt is a domestic support obligation nondischargeable under § 523(a)(5) of the Bankruptcy Code,[15] (2) the $8,000 attorney fee award in the Divorce Decree is not dischargeable under § 523(a)(15),[16] and (3) the debts owed to third parties under Paragraph 3(A), for the marital residence, and 6(B), for "all remaining marital debt," are not dischargeable under § 523(a)(15).

Defendant raises only two arguments.[17] First, he argues his direct liability to the third parties for the marital residence and all remaining debt is dischargeable only as to the Plaintiff, but his direct liability to these third party creditors is discharged. Defendant second argues the award to the Plaintiff of 60% of his military retirement pay did not create a debt but rather vested the Plaintiff with an ownership interest; thus, the obligation is not a "debt" and is not dischargeable.

---

[14] 11 U.S.C § 523(a)(15).
[15] Doc. No. 17 at 8. *See* 11 U.S.C. § 523(a)(5); *see generally* 11 U.S.C. § 101(14A).
[16] Doc. No. 17 at 8–9.
[17] Defendant also asks the Court to affirmatively hold that the remaining obligations *do not* qualify as domestic support obligations not dischargeable under § 523(a)(5) so he can use the finding as *res judicata* in a future Chapter 13 bankruptcy case. In a Chapter 13 case, debts falling under § 523(a)(15) *are* dischargeable, but domestic support debts under § 523(a)(5) are not. *In re Silver*, No. 12-73950-BEM, 2013 WL 4498813, at *5 (Bankr. N.D. Ga. July 22, 2013) ("The plain language of § 1328 makes clear that obligations that are nondischargeable under § 523(a)(5) are similarly not dischargeable in Chapter 13 while, § 523(a)(15) obligations that would be non-dischargeable in a Chapter 7 case, are generally dischargeable in Chapter 13.").
    In her complaint, the Plaintiff alleges the military retirement pay and the Defendant's obligation to pay off the note on the marital residence are nondischargeable under § 523(a)(5) as support obligations. But, Plaintiff never introduced evidence on this issue, assumedly because she was confident the same debts were not dischargeable under her alternative theory, § 523(a)(15). Courts cannot rely solely on a divorce decree to determine if an obligation is in the nature of support; a court must "look beyond the label to examine whether the debt actually is in the nature of support or alimony." *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001). If she intended to proceed on the § 523(a)(5) count, then she would have had the burden to prove that, "at the time of [the debts'] creation the parties intended the obligation[s] to function as support or alimony." *Id.*
    Because these debts indeed are nondischargeable under theories different than § 523(a)(5), the Court need not make the determination the Defendant seeks. If he intends to file a Chapter 13 case in seven years in order to discharge these debts, then the appropriate court can make such a determination at that juncture with the benefit of a full record.

**Debts to Third-Party Creditors Discharged Except as to the Plaintiff**

Defendant argues that his obligations to pay third parties under the Divorce Decree for the mortgage on the marital residence and other marital debts are dischargeable as to the third parties. Defendant admits these obligations are nondischargeable under § 523(a)(15) as to the Plaintiff. Plaintiff agrees with the Defendant's position regarding the "remaining marital debt," but disagrees as to the marital residence obligation because she maintains the debt is a "domestic support obligation."

Plaintiff presented no evidence other than the Divorce Decree. The Court cannot determine on this sparse record whether the Defendant's obligation to pay the mortgage on the marital residence is "in the nature of support." To prevail under § 523(a)(5), a party must prove the debt is "in the nature of support or alimony."[18] The Court cannot rely solely on labels in the Divorce Decree because "it is likely that neither the parties nor the divorce court contemplated the effect of a subsequent bankruptcy when the obligation arose."[19] Plaintiff bears and has failed to meet the burden to prove that, "at the time of [the debts'] creation the parties intended the obligation[s] to function as support or alimony."[20]

The debts the Defendant owes to third parties after the Divorce Decree are dischargeable as to the third parties. Section 523(a)(15) only excepts from the discharge obligations owed "to a spouse, former spouse, or child of the debtor."[21] "This statutory language is clear and unambiguous. The only direct beneficiaries to this exception are a spouse, former spouse, or child of the debtor."[22] Any personal liability the Defendant bears to creditors other than the Plaintiff on the note for the marital residence or the "remaining marital debts" is dischargeable. Defendant's liability *to the Plaintiff* with respect to these obligations however remains intact.

---

[18] *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001).
[19] *Id.* (citing In re Gianakas, 917 F.2d 759, 762 (3d Cir. 1990)).
[20] *Id.*
[21] 11 U.S.C. § 523(a)(15).
[22] *In re Reinhardt*, 478 B.R. 455, 457 (Bankr. M.D. Fla. 2012).

Put differently, under the Divorce Decree, the Defendant must pay the Plaintiff's debt on the marital residence note and the "remaining debts."[23] This debt is not discharged as to the Plaintiff, only as to the third party creditors.

### **Plaintiff's Share of the Defendant's Military Retirement Pay is her "Sole Property"**

The Parties do not agree on how to treat the Plaintiff's 60% share of the Defendant's military retirement pay. The Divorce Decree awarded the Plaintiff 60% of the Defendant's "military disposable retirement pay."[24] Plaintiff maintains this obligation is a debt, nondischargeable under § 523(a)(15) of the Bankruptcy Code. Defendant argues the Divorce Decree did not create a debt owing to the Plaintiff but instead granted the Plaintiff sole and separate ownership of a 60% interest in his military pension. Because the Plaintiff's interest in his military pension is not a debt, the Defendant contends it is not subject to discharge.

Plaintiff undisputedly already receives 50% of the Defendant's military retirement pay directly from the United States government.[25] In the early 1980s, Congress enacted the Uniformed Former Spouses' Protection Act[26] ("UFSPA"), which allowed states to treat military retirement pay as marital property. Section 1408(c) of the UFSPA provides that a court may treat "disposable retired pay . . . either as property solely of the member or as property of the member and his spouse."[27] The UFSPA also contains a direct payment provision, allowing a former spouse awarded a portion of a former service member's retirement pay to receive direct payment of his or her portion of the retirement pay directly from the federal government.[28] Importantly, the UFSPA *limits* this direct payment to 50% of the former service member's

---

[23] *See In re Washburn*, No. 09-80842-MHM, 2010 WL 4117680, at *3 (Bankr. N.D. Ga. Oct. 1, 2010) (holding that, despite the lack of hold harmless or indemnification language, the defendant's divorce obligation to pay off a credit card and reduce mortgage debt "fell within the scope of § 523(a)(15)").
[24] Divorce Decree ¶ 4(A).
[25] Doc. No. 1 ¶ 6(b); Doc. No. 16 at 6.
[26] 10 U.S.C. § 1408.
[27] 10 U.S.C. § 1408(c).
[28] 10 U.S.C. § 1408(d).

retirement pay.[29] That is, if a court awards a former spouse *more than* 50% of a former service member's military retirement pay, the former spouse must collect anything over 50% from his or her former spouse, not the federal government. Because the Plaintiff receives 50% of the retirement pay under the UFSPA, the dispute here is limited to the remaining 10%.

Defendant maintains the Divorce Decree granted the Plaintiff a property interest in the retirement pay and did not create a debt he owes his former spouse. Defendant cites *In re Petty*[30] for support. In *Petty*, the bankruptcy court held that the award of a percentage of the defendant's military retirement pension to the plaintiff was the plaintiff's "sole and separate property," not a debt owed by the defendant to the plaintiff.[31] The court concluded, "[i]t appears well-established that in certain circumstances a divorce court's award of a portion of the debtor's military pension to a former spouse creates a vested property interest in the former spouse."[32] Indeed, a substantial majority of case law supports the Defendant's position.[33]

"The question of whether or not the Plaintiff's interest in the pension plan is her separate property interest, and thus not part of her former husband's bankruptcy estate, is determined by reference to state law."[34] The Divorce Decree in this case was entered by a Georgia state court, but Georgia's law is similar to Florida law interpreted by the court in *Petty*. Georgia law "is well-settled that retirement benefits acquired during the marriage are marital property subject to equitable division," whether vested or unvested.[35] An award of property through an equitable division effectively transfers title of that property to the recipient of the award.[36] In the present

---

[29] 10 U.S.C. § 1408(e)(1). The direct pay limitation, however, does not restrict state courts from awarding more than 50% of a former service member's retirement pay to his former spouse. *See, e.g.*, *Ex parte Smallwood*, 811 So. 2d 537, 540 (Ala. 2001); *Deliduka v. Deliduka*, 347 N.W.2d 52 (Minn. Ct. App. 1984).
[30] *In re Petty*, 333 B.R. 472 (2005).
[31] *Id.* at 477–78.
[32] *Id.* at 477.
[33] *See In re Baker*, 274 B.R. 176, 192 (Bankr. D.S.C. 2000) (citing majority case law).
[34] *In re Brown*, 168 B.R. 331, 334 (Bankr. N.D. Ill. 1994); *accord In re McQuade*, 232 B.R. 810, 812 (Bankr. M.D. Fla. 1999).
[35] *Taylor v. Taylor*, 283 Ga. 63, 63, 656 S.E.2d 828, 829 (2008) (citations omitted).
[36] *See Wagan v. Wagan*, 263 Ga. 376, 434 S.E.2d 475 (1993); *Hollis v. Hollis*, 278 Ga. 303, 602 S.E.2d 644 (2004).

case, if the Divorce Decree awarded the Plaintiff her interest in the Defendant's military retirement pay as an equitable division of property, then she owns that interest separate and apart from the Defendant's interest.

The Divorce Decree clearly awards the Plaintiff an interest in 60% of the Defendant's military retirement pension as an equitable division of property. Paragraph 4(A) of the Divorce Decree pertains to the division of "marital property" and provides that the Defendant's "military disposable retirement pay" is "subject to equitable division" and awards the Plaintiff 60% and the Husband 40%.[37] Based on the language of the Divorce Decree and the wealth of case law, the Divorce Decree vested a property interest in the Plaintiff and did not create a debt. Plaintiff's holds a 60% ownership interest in the Defendant's military retirement pay.

This determination however does not end the matter. The military already pays the Plaintiff 50% of the Defendant's military retirement pay directly. Defendant has failed to remit the remaining 10% to the Plaintiff. As discussed above—and acknowledged by the Defendant—this 10% is the Plaintiff's property. How should this 10% that the government cannot pay directly to the Plaintiff be treated?

When the federal government does not directly pay equitably divided military retirement pay to a former spouse, courts typically hold that the initial recipient of the military retirement payments—the retired service member—holds the former spouse's portion in constructive trust for that spouse.[38] The former service member serves as "a conduit through which the wife would receive her interest in the retirement fund."[39] The fact pattern indeed fits the archetype of a

---

[37] *Id.* at 4.

[38] *See In re Farrow*, 116 B.R. 310, 312 (Bankr. M.D. Ga. 1990) (holding, under Georgia law, "if there is an obligation on the Debtor to make the payment in question, he holds any post petition payment that he might receive on his retirement benefit in constructive trust for the Plaintiff to the extent of [the plaintiff's interest]"); *see also Bush v. Taylor*, 912 F.2d 989, 992–93 (8th Cir. 1990); *Matter of Newcomb*, 151 B.R. 287, 290 (Bankr. M.D. Fla. 1993); *Matter of Sadowski*, 144 B.R. 566, 568 (Bankr. M.D. Ga. 1992).

[39] *In re Teichman*, 774 F.2d 1395, 1398 (9th Cir. 1985).

constructive trust, "a remedy created by a court in equity to prevent unjust enrichment."[40] In Georgia, "[a] constructive trust arises with respect to property the title to which was acquired by fraud, or where although acquired originally without fraud, it is against equity that the title should be retained by the one who holds it."[41]

Defendant receives the 10% payment directly from the military and "it is against equity that the title should be retained by" him.[42] Because the Plaintiff owns her interest in the Defendant's military retirement pay as part of her separate property, "the Debtor's continuing responsibility to remit to the defendant her specified share of any post-petition receipts of retirement pay survives the entry of the discharge order."[43]

Mr. Hicks may receive this 10% of his military retirement but he is only a custodian holding it in constructive trust for his former wife. This leaves one more unresolved issue—the dischargeability of the unliquidated arrearages the Defendant owes the Plaintiff for his pre-petition failure to remit the 10% from the date of the Divorce Decree to the date he filed his Chapter 7 petition. Do the 10% arrearages accrued up to the petition date amount to a debt? The Bankruptcy Code defines "debt" as "liability on a claim."[44] A "claim" in turn is "a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[45] "By making the terms 'debt' and 'claim' coextensive, Congress has 'adopt[ed] [ ] the broadest

---

[40] *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137, 508 S.E.2d 646, 648 (1998).
[41] *Georgia Dist. Council of Assemblies of God, Inc. v. Atlanta Faith Mem'l Church, Inc.*, 267 Ga. 59, 61, 472 S.E.2d 66, 69 (1996) (citing *Kelly v. Johnston,* 258 Ga. 660, 661(1), 373 S.E.2d 7 (1988)).
[42] *Id.*
[43] *In re Thomas*, 47 B.R. 27, 33 (Bankr. S.D. Cal. 1984).
[44] 11 U.S.C. § 101(12).
[45] 11 U.S.C. § 101(5)(A).

possible definition of debt.'"[46] As discussed above, the Defendant acted as constructive trustee for the Plaintiff's benefit and was under a duty to remit the Plaintiff's 10% to her. Defendant's failure to do so—for which he has not provided any explanation—gives rise to "claim," even though it is not yet liquidated or reduced to judgment. Defendant owes a debt to the Plaintiff for the 10% arrears he failed to pay before filing this bankruptcy case.[47]

Some courts have held a retired service member's failure to turn over military retirement pay held in constructive trust to his former spouse can constitute conversion or, in the case of *In re Petty*, cited by the Defendant, civil theft.[48] In *Petty*, the defendant withheld military pension payments equitably awarded to the plaintiff.[49] The state court entered a civil theft judgment against the defendant, complete with treble damages, finding his "retention and non-payment after his receipt (in trust) cannot be excused."[50] The 10% arrears in this case could be reduced to judgment through a number of mediums, such as conversion, embezzlement, civil theft, or an order finding the Defendant in contempt of the Divorce Decree. In any event, the obligation is not dischargeable under § 523(a)(15) of the Bankruptcy Code.

Section 523(a)(15) excepts from the discharge any debt to a "former spouse . . . that is incurred by the debtor in the course of a divorce or separation or *in connection* with a separation agreement, divorce decree or other order of a court of record."[51] Section 523(a)(15) "is not

---

[46] *In re Tanner Family, LLC*, 556 F.3d 1194, 1196 (11th Cir. 2009) (quoting *Penn. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 558, 564, 110 S. Ct. 2126, 2130, 2133, 109 L. Ed. 2d 588 (1990)); *see also In re Chase & Sanborn Corp.*, 904 F.2d 588, 595 (11th Cir. 1990) ("It is established that 'debt' is to be given a broad and expansive reading for purposes of the Bankruptcy Code, and that 'when a creditor has a claim against a debtor-even if the claim is unliquidated, unfixed, or contingent -the debtor has incurred a debt to the creditor.'").

[47] *Cf. In re Sweeney*, No. 05-1068, 2006 WL 2796737, at *4 (Bankr. D. Vt. Sept. 27, 2006) ("Although the Plaintiff's interest in the Marital Residence (and any proceeds thereof) was outside the bankruptcy estate, by virtue of the constructive trust created by the divorce decree, the Defendant's failure to deliver to the Plaintiff his share of the proceeds from a sale of a portion of his interest in the Marital Residence gave rise to a debt in the bankruptcy case.").

[48] *See In re Thomas*, 47 B.R. 27, 33–34 (Bankr. S.D. Cal. 1984) (holding defendant liable for conversion for failing to remit pension payments awarded to plaintiff); *In re Petty*, 333 B.R. 472, 476 (Bankr. M.D. Fla. 2005) (citing state court award finding defendant liable for civil theft).

[49] *Petty*, 333 B.R. at 476.

[50] *Id.*

[51] 11 U.S.C. § 523(a)(15) (emphasis added).

limited to simply divorce decree judgments alone but excepts any debt incurred by the debtor in the course of divorce or any debt *in connection* with a divorce decree."[52] Debts resulting from enforcement of obligations imposed by a divorce decree fall within § 523(a)(15) because they are "in connection" with the divorce decree.[53]

Here, the Defendant's obligation to remit 10% of the military retirement pay to the Plaintiff arose "in connection" with the Divorce Decree. "[T]he scope of § 523(a)(15) is broad."[54] Defendant would not owe a debt to the Plaintiff for the 10% arrearages but for the Divorce Decree, and any judgment resulting from his failure to pay that amount to the Plaintiff is inseparable from the Divorce Decree. The debt the Defendant owes to the Plaintiff for his failure to remit 10% of his military retirement pay to the Plaintiff between the entry of the Divorce Decree and his bankruptcy filing is not dischargeable pursuant to § 523(a)(15) of the Bankruptcy Code. This Court will defer to the state court to determine the exact amount due.

In conclusion, all obligations created by the Divorce Decree are not dischargeable including the alimony debt, attorney's fees, and the marital residence debt and "all remaining debt" in Paragraph 6(B) of the Divorce Decree. Debtor's direct liability to the third-party creditors however is discharged. Debtor further has a continuing obligation to remit the Plaintiff's share of his military retirement pay to her as a constructive trustee. And the Defendant's liability for pre-petition failure to remit military retirement payments to the Plaintiff is nondischargeable. A separate final judgment in favor of the Plaintiff and against the Defendant shall be entered simultaneously with this Memorandum Opinion.

---

[52] *In re Quarterman*, No. 11-07867-SSC, 2012 WL 4965159, at *4 (Bankr. D. Ariz. Oct. 17, 2012) ("A state court judgment to enforce a debt arising from a divorce decree is surely a debt 'in connection with' a divorce decree.").
[53] *See In re Kearney*, 433 B.R. 640 (Bankr. S.D. Tex. 2010) (holding debt from settlement agreement arising from debtor's failure to remove lis pendens from property as required by divorce decree was "in connection" with divorce decree); *In re Taylor*, 737 F.3d 670 (10 Cir. 2013) (holding state court judgment in favor of plaintiff against debtor for overpayment of alimony was entered "in connection" with divorce decree).
[54] *In re Adam*, No. ADV 12-01295-DS, 2015 WL 1530086, at *9 (B.A.P. 9th Cir. Apr. 6, 2015).

Michael Faro, Attorney for Plaintiff, is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

Case 6:14-ap-00130-KSJ    Doc 20    Filed 05/22/15    Page 12 of 12

Hicks 14-ap-00130 Findings of Fact and Conclusions of Law /  / Revised: 5/22/2015 2:13:00 PM                    Printed: 5/22/2015
Page: 12 of 12